### MACK *v.* COLLERAN *et al.*

*(Common Pleas of New York City and County, General Term.* March 7, 1892.)

MECHANICS' LIENS—PAYMENTS TO SUBCONTRACTOR—APPLICATION.

> The subcontractor cannot apply payments to him by the contractor, out of moneys paid by the owner, to the satisfaction of a demand against the contractor growing out of other transactions, under Laws 1885, c. 342, § 1, rendering the owner liable to the contractor and subcontractors for the amount of the contract only.

Appeal from city court, general term.

Action by James Mack against John Colleran and others to enforce a mechanic's lien. From a judgment for plaintiff, defendants appeal. Reversed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

*William F. Randel*, for appellants. *Phillips & Avery*, for respondent.

BOOKSTAVER, J. This action was brought to foreclose a mechanic's lien against two buildings known as "Nos. 128 and 130 West Thirty-First Street," in this city, belonging to the defendant Constantine V. King, who had discharged the lien by giving a bond. King, as owner, made a contract with the appellant Colleran, whereby Colleran undertook to erect the buildings in question. He sublet the contract for such erection, with the exception of the plumbing work, to Robert H. Andruss. Andruss made subcontracts with various mechanics, including one for the bluestone with the respondent. After proceeding with the work for some time, Andruss abandoned it before the third payment became due according to the terms of the contract. At that time respondent had done work and furnished materials to the amount of $1,217, as found by the trial judge. It is conceded by all the parties that

the respondent, before filing his lien, had received, of the moneys paid to Colleran on this job by the owner,. the sum of $1,114, part of which had been paid by Colleran, the principal contractor, and part by Andruss, the first sub-contractor. Five hundred dollars of the moneys received from Andruss was applied by the respondent (with the consent of the former, as it is claimed) upon an old debt due him from Andruss, arising on other transactions entirely disconnected with the work in question. There is no evidence, however, that the principal contractor knew of this appropriation until after Andruss stopped work, and, when it came to his knowledge, he objected to such appropriation, and claimed that it should be applied to the payment for the work done by the respondent upon the buildings in question, as appears by the testimony of the respondent himself. The appellant, Colleran, in his answer claimed that this $500 was paid on account of the work done by the respondent, and maintained this position on the trial. But the learned trial judge held that the respondent had the right to apply it as he did, and refused to allow it as a payment upon the contract made by the respondent with Andruss. This raises a novel question, and that is whether a contractor may appropriate moneys received under a building contract to the payment of an old debt, or must apply it under the contract under which he does the work. That he may apply it as was done in this case is supported with much ingenuity by the respondent. It is quite true that until a mechanic files his lien he is only a general creditor of the owner or principal contractor. *Payne* v. *Wilson*, 74 N. Y. 355. It is also true that where payments are made under the law-merchant or upon an open account, etc., the creditor, in the absence of a special agreement, may apply the money received upon the earlier debt, and indeed, if he does not, the law will so apply it for him. It was contended on the argument that the money received was like any other money, and might be applied on any debt which the subcontractor saw fit. This leaves out of view entirely the scheme and object of the mechanic's lien act. It has been uniformly held that moneys due or to grow due from the owner on a building contract constitute a fund to which the liens of subcontractors attach when filed in conformity with the statute. To support this, it is only necessary to refer to some of the later decisions on that subject. *Crane* v. *Genin*, 60 N. Y. 127; *Payne* v. *Wilson, supra; Post* v. *Campbell*, 83 N. Y. 282; *Gibson* v. *Lenane*, 94 N. Y. 183; *Larkin* v. *McMullin*, 120 N. Y. 206, 24 N. E. Rep. 447. Most of the cases last cited are also authority for holding that this fund can only be diverted from its object by *bona fide* payments made by the owner in accordance with the terms of his contract. Consequently it has been held that, as between the owner and one who has furnished labor or materials to the contractor, the owner can plead only damages growing out of the original contract through the fault or negligence either of the contractor or subcontractor, abandonment of the contract, defective work, and the like. *Cheney* v. *Troy Hospital*, 65 N. Y. 282; *Miller* v. *Moore*, 1 E. D. Smith, 737; *Gourdier* v. *Thorp*, Id. 698; *Develin* v. *Mack*, 2 Daly, 100. A general indebtedness cannot be set off as against a mechanic by parties standing between him and the owner. *Hagan* v. *Society*, 14 Daly, 131; *Hoyt* v. *Miner*, 7 Hill, 525; *Develin* v. *Mack, supra; Bullock* v. *Horn*, (Ohio,) 7 N. E. Rep. 737. In the latter case it was held that where a mechanic who, under the employment of a contractor, and with the knowledge of the owner, had performed labor upon the construction of a building, and had taken the necessary steps to obtain a lien upon the premises, and brought his action against the owner to recover the amount due and have the same declared a lien, such owner could not be allowed to set off a claim against the contractor not growing out of the contract, acquired by him after the labor was performed, although such claim was acquired before notice that the mechanic's demand had not been paid. To such an extent have the courts gone to preserve the fund for the payment of the material-men and laborers. And in *Stevens* v. *Reynolds*, (Sup.) 7

N. Y. Supp. 771, where a material-man had filed a lien for material furnished a contractor, and afterwards the contractor gave to another material-man, who had also furnished material, an order on the owner for a sum in excess of that due him for the material furnished, the excess being intended as payment on another debt, it was held that the order was good only for the amount actually due for the material furnished upon the work against which it was drawn. This was undoubtedly equitable in that case, but it may be questioned whether the order was valid for any amount. At any rate, it is authority for holding that the fund cannot be diverted for the payment of another debt. But, again, the owner is only liable to the contractor and subcontractors for the amount of the contract; he cannot be compelled to pay more. Section 1, Laws 1885, c. 342; *Larkin* v. *McMullin, supra*. The principal contractor is only bound to pay the aggregate amount of his subcontracts, according to their terms. *Hagan* v. *Society, supra; French* v. *Bauer*, (Com. Pl. N. Y.) 11 N. Y. Supp. 69. The intent of the statute with relation to the subcontractor is that he should be subrogated to the rights of the contractor with respect to the funds due or to become due under the contract, (*Herbert* v. *Herbert*, 57 How. Pr. 333; *Schneider* v. *Hobien*, 41 How. Pr. 232; *Hofgesang* v. *Meyer*, 2 Abb. N. C. 111; *Cheney* v. *Troy Hospital*, 65 N. Y. 282; *Mc-Millan* v. *Wine Co.*, 5 Hun, 12;) and the lien of the subcontractor, in view of the fact that he is merely subrogated to the contractor's rights, attaches only to the moneys due or to became due on the contract with the owner, (*Crane* v. *Genin*, 60 N. Y. 127; *Gibson* v. *Lenane, supra; Post* v. *Campbell, supra.*) It is therefore clear that in this case Andruss, even had he completed the work, could not have compelled Colleran to have paid him the $1,114 he had already paid for the plaintiff's work; and, if Andruss could not, it is difficult to see how the plaintiff can. By the decision of the learned trial judge, however, he has only been credited with a payment of $614, and according to the judgment in this case would be compelled to pay $500 more than the contract price for the work done by the respondent. This is manifestly unjust. We therefore conclude that the money due under building contracts cannot be diverted to the payment of debts not arising under such contracts. The erroneous decision of the court below in regard to this question led it to hold that the respondent was not bound to complete his contract when requested to do so by Colleran, until he had been paid over again for a part of his work, which was also error. The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

All concur.