(10 Misc. Rep. 373.)

MOSHER et al. v. LEWIS et al.

(Common Pleas of New York City and County, General Term. December 3, 1894.)

1. MECHANIC'S LIEN—LESSEE—LIABILITY FOR IMPROVEMENTS.
    Where a lease provides that the lessee may, at his own expense, alter and repair the building, one who makes alterations under a contract with the lessee does the work "with the consent of the owner," within Laws 1885, c. 342, providing who may acquire a mechanic's lien.

2. SAME—OBJECT OF IMPROVEMENTS.
    Where improvements become part of a building, the fact that they were designed specially for the tenants' business will not affect the right of the person doing the work to a mechanic's lien.

3. SAME—RECORDING LEASE—NOTICE TO MATERIAL MEN.
    The recording of a lease is not notice of its contents to one who, under a contract with a tenant, supplies material for repairs to a building on the demised premises.

4. SAME—SIDEWALK—RIGHT TO BUILD.
    A provision in a lease that the lessee may repair and alter the building on the demised premises does not give him the right to build a new sidewalk, so as to entitle one who, under contract with the lessee, builds the sidewalk, to acquire a mechanic's lien on the leased land.

v.31 N.Y.s.no.5—28

**5. SAME—OWNER'S CONSENT.**

The mere acquiescence of a lessor to the building by a tenant of a sidewalk in front of the demised premises is not a consent to the building of such sidewalk, so as to entitle the person building the same to a mechanic's lien on the demised premises, where it does not appear that the lessor had any legal authority to cause the sidewalk to be built.

Appeal from special term.

Action by Merton S. Mosher and another against Charles Lewis and others to foreclose a mechanic's lien. The complaint was dismissed, and plaintiffs appeal. Reversed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Andrew Shiland, Jr., for appellants.
Sidney H. Stuart, Jr., for respondents.

BISCHOFF, J. The defendant owners, Charles and Joseph Lewis, demised the "lot of ground, with the buildings thereon erected, situate in the Ninth ward of the city of New York, at the south-westerly corner of Eighth avenue and Thirteenth street," with the "appurtenances," to John W. Wilson and John C. Van Houten, for 10 years from May 1, 1893; the lease being dated February 7, 1893, and recorded in the office of the register of said city and county two days thereafter. Among other things, the lessees covenanted to "keep the said demised premises, with the improvements, in good repair and condition, at their own expense; * * * these repairs to include all inside and outside repairs, roofs, or anything else, of whatever kind and description, connected with the demised premises; it being understood and intended that no repairs shall fall on or be made by the parties of the first part (the lessors) or that they shall be liable therefor"; and further, that they would "either improve the building now upon said premises, or erect new buildings thereon," and at the expiration of the term surrender to the lessors "the said demised premises * * * and all improvements or repairs of whatsoever nature, * * * together with all and any new or repaired buildings." On the day succeeding the date of the lease the lessors executed and delivered their written consent to the lessees to "make such alterations in the buildings demised by said lease as they (the lessees) may elect." Before the commencement of the term the lessees entered into possession of the demised premises, and began making improvements and repairs thereto. Between April 15, 1893, and June 15, 1893, both dates inclusive, the plaintiffs, at the instance and request of the lessees, performed services and furnished materials of the aggregate value of $584.40, of which $233.76 was for "concreting the cellar, making and laying the cellar floor, and facing the cellar walls," and $350.64 was for "making and laying an artificial stone sidewalk and repairing the sidewalk" in the street immediately adjacent to the lot and buildings demised. While the plaintiffs' work was in progress, Charles Lewis, one of the lessors and owners, defendants, on several occasions visited the premises, saw the work, and orally expressed his approval thereof. Up to the time of the completion of their work the plaintiffs were in actual ignorance of the provisions of the lease, though they knew

Wilson and Van Houten's interest in the premises to be that of lessees only. The lessees having failed to pay the plaintiffs for the work, the latter claimed to be entitled to a lien therefor upon the premises as against the lessors and owners, defendants, pursuant to the provisions of the mechanics' lien law (chapter 342, Laws 1885, as amended by chapter 316, Laws 1888), and filed a notice of such lien, having in that respect complied with every requirement of the statute to render the notice effectual. This action was brought to foreclose the lien, and upon the facts stated the learned trial judge dismissed the complaint, upon the merits, as against the lessors and owners, defendants. From the judgment entered upon such direction this appeal was taken by the plaintiffs.

The question presented, therefore, on this appeal, is whether the plaintiffs had acquired a valid lien as against the lessors and owners, defendants, for the whole or any part of their claim. With regard to so much of the plaintiffs' claim as is for "concreting the cellar, making and laying the cellar floor, and facing the cellar walls," the lien is indisputable. Section 1 of the mechanics' lien law confers the lien, if the services were performed or the materials were furnished with the "consent" of the "owner." That the "owner" comprehended by the statute is not only the correlative of the "contractor," as both terms may be popularly understood, and that the "consent" of the "owner" may be predicated of his agreement with another, the lessee or vendee, whereby the latter undertakes to make improvements or repairs at his own expense, was ruled in Husted v. Mathes, 77 N. Y. 388; Burkitt v. Harper, 79 N. Y. 273; and Otis v. Dodd, 90 N. Y. 336. True, these cases arose under former statutes,—the first under chapter 402, Laws 1854, as amended by chapter 489, Laws 1873; the second under chapter 478, Laws 1862; and the third under chapter 489, Laws 1873, as amended by chapter 233, Laws 1875. Nevertheless, the provisions of the several statutes alluded to are so substantially alike to the provisions of the corresponding sections of the present mechanics' lien law that the rulings last above alluded to have been approved or cited in Schmalz v. Mead, 15 Daly, 223, 4 N. Y. Supp. 614, affirmed 125 N. Y. 188, 26 N. E. 251; Miller v. Mead, 127 N. Y. 544, 28 N. E. 387; Pell v. Baur, 133 N. Y. 377, 31 N. E. 224; Cowen v. Paddock, 137 N. Y. 188, 33 N. E. 154; and Spruck v. McRoberts, 139 N. Y. 193, 34 N. E. 896,—each of which arose under the present law (Laws 1885, c. 342). The learned trial judge thought the present case distinguishable from those above referred to, because of the plaintiffs' alleged notice of the fact that, pursuant to agreement with the lessees, at whose request and upon whose promise to pay the plaintiffs performed the services and furnished the materials, the lessors and owners, defendants, were in no manner to be answerable for the improvements or repairs. Neither in Otis v. Dodd nor in any other of the cases referred to did it appear that the lienors had or did not have notice of a like provision in the agreement under which the persons causing the improvements or repairs to be made were in possession of the premises; hence the circumstance of such notice is to be taken as immaterial. But, though the determination of the last-mentioned proposition may not be involved in the former decisions, it is our opinion that such

notice cannot impair the right to a lien as against the lessors' and owners', defendants', interest in the premises.    The right to such a lien did not exist at common law.    Spruck v. McRoberts, 139 N. Y. 193, 197, 34 N. E. 896; Benton v. Wickwire, 54 N. Y. 226; Mushlitt v. Silverman, 50 N. Y. 360; Freeman v. Cram, 3 N. Y. 305; Grant v. Van Dercook, 8 Abb. Pr. (N. S.) 465; Huxford v. Bogardus, 40 How. Pr. 94.    It "is a peculiar, particular, and special remedy, given by statute, founded and circumscribed by the terms of its own creation."    15 Am. & Eng. Enc. Law, p. 5.    It is created by the statute, but arises, not from contract, but from the employment of services and the use of materials in improvements or repairs with the "owner's" consent, though it may be incidental to a contract.    Id. p. 65, note 5; Frost v. Ilsley, 54 Me. 345, 351.    The present mechanics' lien law does not prescribe ignorance of the mechanic or material man of the "owner's" agreement with another, whereby the latter has assumed the expense, as a condition of the right to acquire the lien; hence we may not annex it.    The determinative fact is that the services were employed, or the materials furnished, with the "owner's" consent.    In Miller v. Mead, 127 N. Y. 544, 549, 28 N. E. 387, it was held that the "owner" and "contractor" cannot, by agreement among themselves, to which the lienor was not a party, and of which he had no notice, subordinate the lien of a mechanic or material man to the "owner's" claim for advances.    Whether the lienor's rights, as such, would have been impaired if he had notice of the provisions of the agreement, the court did not undertake to say.    However, the question of notice cannot arise in the present case.    That the plaintiffs did not have actual notice of the lessees' covenant to make the improvements and repairs at their own expense appeared from unchallenged proof, if, indeed, affirmative proof of nonnotice was requisite to the plaintiffs' case; and constructive notice to the plaintiffs, in favor of the lessors and owners, defendants, did not arise from the fact of the record of the lease.    The recording act (3 Rev. St. [Banks & Bros.' 7th Ed.] p. 2215, § 1) is that:

"Every conveyance of real estate, within this state, hereafter made, shall be recorded in the office of the clerk of the county where such real estate shall be situated; and every such conveyance not so recorded shall be void as against any subsequent purchaser, in good faith, and for a valuable consideration, of the same real estate, or any part thereof, whose conveyance shall be first duly recorded."

Its only effect is to afford a means of protection to the grantee against the acts of the grantor.    Lacustrine Fertilizer Co. v. Lake Guano Fertilizer Co., 82 N. Y. 476, 485.    No advantage can accrue therefrom to a grantor.

It appeared on the trial from the testimony of Wilson, one of the lessees, called as a witness for the plaintiffs, that the improvements and repairs were designed to fit the demised premises for the purposes of an hotel and café, which the lessees proposed to conduct thereon.    We are unable to understand how that fact can impair the plaintiffs' lien, in view of the further facts that the improvements and repairs appear to have been of a character which made them substantially a part of the premises, and that the statute under which

the lien was acquired does not discriminate against improvements and repairs which are designed for special uses. A different question might have been presented if it had appeared in evidence that the improvements were mere trade fixtures, which did not constitute an integral part of the realty. Baum v. Covert, 62 Miss. 113. With regard to the improvements and repairs to the sidewalk, however, the lien was not established. We do not question the right of a mechanic or material man to acquire a lien for improvements or repairs to the sidewalk, when made with the "owner's" consent. This right is expressly given by section 1 of the present mechanics' lien law. But we predicate our conclusion on the absence of sufficient evidence of the lessors' and owners', defendants', consent. The "premises demised" were the "lot of ground," with the "buildings" thereon and the "appurtenances." Though this must be construed to include the easements of light, air, and the means of access in the street adjacent to the premises, and necessary to their usual and proper enjoyment (In re New York Cent. & H. R. R. Co., 49 N. Y. 414, 419; Mott v. Palmer, 1 N. Y. 564, 569; 12 Am. & Eng. Enc. Law, p. 983; Wood, Landl. & Ten. p. 310, § 213; Tayl. Landl. & Ten. p. 111, § 161; Gear, Landl. & Ten. §§ 67, 170), it included no part of the street itself, the control of which was presumptively in the public authorities for such purpose by law established. Prima facie, the obligation to maintain the street in proper repair was upon the municipality. City of Rochester v. Campbell, 123 N. Y. 405, 25 N. E. 937; 24 Am. & Eng. Enc. Law, p. 87. That by section 321 of chapter 569, Laws 1887, the municipality is authorized, in certain cases, to impose the expense incurred as a charge upon the adjacent property, does not change the rule. The lessees' covenant to keep the "demised premises" in good repair cannot be taken as evidence of the lessors' consent to improvements or repairs elsewhere. Neither was the lessees' further covenant to "either improve the building now upon said premises, or to erect new buildings thereon," evidence of a consent to improvements or repairs to the sidewalk. Again, the lessors' written consent, made subsequent to the date of the lease, was expressly limited to "alterations" in the "buildings demised."

It remains only to inquire whether Charles Lewis' oral expression of approval while the plaintiffs' work was in progress may be taken as a consent to the work. Waiving the objection that, without express authority from his co-owner, Charles Lewis' consent at most subjected his own interest to the lien (White v. Railway Co., 139 N. Y. 19, 30, 34 N. E. 887), the evidence of an oral consent to the plaintiffs' employment and use of materials for improvements and repairs to the sidewalk is equally deficient. It nowhere appeared that the lessors and owners, defendants, could lawfully authorize another to make such improvements or repairs, or prevent him from making the same. To consent implies the power to authorize and to prevent, a degree of superiority which arises from the presence of a combined mental and physical ability to act. One cannot properly be said to have consented to an act which he could neither authorize nor prevent. Ottiwell v. Muxlow (Com. Pl. N. Y.) 6 N. Y. Supp. 518; Ottiwell v. Watkins, 15 Daly, 308, 6 N. Y. Supp. 518; Havens

v. Electric Light Co. (Sup.) 17 N. Y. Supp. 580; Robbins v. Arendt, 4 Misc. Rep. 196, 198, 23 N. Y. Supp. 1019; Webst. Unab. Dict. "Consent." The lien sought to be foreclosed in this action being valid in part, it was error to dismiss the complaint. Judgment reversed, and new trial granted, with costs to appellants to abide the event. All concur.